DATED: JULY 26, 2010

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| LOUIS CHESTER ROY, and ) | Case No. 09-2972 |
| MEGAN LYNN ROY ) | |
| ) | |
| Debtors. ) | Chapter 7 |
| ) | |
| ) | |
| LOUIS CHESTER ROY, and MEGAN ) | |
| LYNN ROY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Adv. Proc. No. 10-24 |
| v. ) | |
| ) | |
| NAVY FEDERAL CREDIT UNION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Louis and Megan Roy (the "Debtors") filed this adversary complaint against Navy Federal Credit Union seeking to recover damages on pre-petition causes of action arising under the West Virginia Consumer Credit and Protection Act. Navy Federal contends that this court lacks subject matter jurisdiction to adjudicate the Debtors' causes of action on the basis that the Debtors' bankruptcy case is now closed and any recovery that Debtors might obtain will have no impact on the administration of their bankruptcy estate.

For the reasons stated herein, the court will deny Navy Federal's motion to dismiss.

1

## I. BACKGROUND[1]

The Debtors filed their Chapter 7 bankruptcy case on December 30, 2009. At that time, the Debtors owed Navy Federal on five different notes. The Debtors' allege that Navy Federal is a "debt collector" within the meaning of Chapter 46A of the West Virginia Code.

On October 10, 2009 – before the Debtors filed their bankruptcy petition – the Debtors emailed Navy Federal to inform it that they had retained counsel. Although the Debtors were represented by counsel, Navy Federal contacted the Debtors about 48 times between October 9, 2009 and November 20, 2009, attempting to collect amounts owed to it. About 15 of those contacts were by telephone to the Debtors' place of employment.

On November 20, 2009, Debtors' counsel personally telephoned Navy Federal and spoke with individuals named "Trish," and then "Ms. Robinson," verifying his representation of the Debtors and advising Navy Federal of West Virginia collection law. Counsel told Navy Federal to cease all telephone calls and correspondence to the Debtors with regard to their debts. Counsel followed up his telephone conversation with a fax, confirming that the Debtors had retained an attorney to file bankruptcy, and that, pursuant to West Virginia law, all collection attempts must immediately cease.

Between November 23, 2009 and December 11, 2009, Navy Federal contacted the Debtors about 22 times attempting to collect the debts owed to it.

Based on Navy Federal's alleged actions, the Debtors assert that they are entitled to damages pursuant to W. Va. Code § 46A-2-128(e), which prohibits "[a]ny communication with a consumer whenever it appears that the consumer is represented by an attorney . . . ." The Debtors also assert that they are entitled to damages pursuant to § 46A-1-126(a), which prohibits a debtor collector from publicizing information relating to any alleged indebtedness or consumer "to any employer . . . before judgment has been rendered . . . ."

---

[1] For purposes of ruling on Navy Federal's motion to dismiss, the court construes the allegations in the Debtors' complaint as true. *E.g., Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) ("When a defendant makes a facial challenge to subject matter jurisdiction . . . . the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.").

When the Debtors filed their December 30, 2009 Chapter 7 bankruptcy petition, they listed their potential claim against Navy Federal for damages under the West Virginia Consumer Credit and Protection Act on Schedule B, their scheduled of personal property, as having an "unknown" value. On Schedule C, their schedule of exempt property, the Debtor claimed $44,000 of that potential claim as exempt. On February 3, 2010, the Debtors filed an amended Schedule C and lowered the claim of exemption in the potential claim to $39,000. No party timely objected to the Debtors' claim of exemption, their Chapter 7 trustee filed a "report of no distribution"[2] on February 8, 2010, the Debtors received their discharge on April 8, 2010, and the case closed that same day.

The Debtors filed this adversary proceeding on February 26, 2010, during the pendency of their bankruptcy case.

## II. DISCUSSION

Navy Federal contends that the outcome of this adversary proceeding can have no conceivable effect on the Debtors' bankruptcy estate on the basis that the Debtors' bankruptcy case is now closed and their Chapter 7 trustee elected not to administer any of the Debtors' assets for the benefit of creditors. Not only did the Debtors exempt up to $39,000 of any recovery in their lawsuit, but the entire cause of action was abandoned back to the Debtors on the closing of their bankruptcy case by operations of law. 11 U.S.C. § 554(c). Thus, in Navy Federal's view, this court has no subject matter jurisdiction to adjudicate the Debtors' adversary proceeding against it.

Bankruptcy jurisdiction is set forth in 28 U.S.C. § 1334. That statute provides that the district courts have original and exclusive jurisdiction of all cases under title 11 and original, but non-exclusive jurisdiction of all civil proceedings arising under, arising in, or related to a case under title 11.[3] Controversies "arise in" title 11 when they "have no existence outside of the bankruptcy." *United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 555 (3d Cir. 1999).

---

[2] That report states, in pertinent part: "I, Martin P. Sheehan, having been appointed trustee of the estate of the above-named debtor(s), report that . . . I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law."

[3] The District Court for the Northern District of West Virginia has referred its bankruptcy jurisdiction to this court.

Controversies "arise under" title 11 if the controversies "clearly invoke substantive rights created by bankruptcy law." *Glinka v. Federal Plastics Mfg., Ltd. (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64, 70 (2d Cir. 2002). A proceeding is "related to" a bankruptcy case when *"the outcome of that proceeding could conceivably have any effect on the estate. . . . [and] could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively). . . ."* *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original). *See also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995) ("[W]hatever ['related to'] test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor."); *New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d 143, 151 (4th Cir. 2000) ("This court has adopted the *Pacor* related to test . . . .").

Navy Federal also contends that this case is governed by a previous decision by this court, *Johnston v. Valley Credit Servs. (In re Johnston)*, No. 05-6288, 2007 Bankr. LEXIS 1174 (Bankr. N.D.W. Va. April 12, 2007). In *Johnston*, as here, the debtor alleged violations of W. Va. Code § 46A-2-128(e), which prohibits communications with a consumer who is represented by an attorney. *Id.* at *2. Importantly, however, the alleged wrongful acts by the creditor in *Johnston* occurred after the debtor filed bankruptcy – not before. *Id.* at *5. The court reasoned that the debtor's "cause of action arising under W. Va. Code § 46A-2-128(e) was not one that "arises in" or "arises under" title 11 because a debtor's right to be free from a debt collector's contacts when the debtor is represented by an attorney exists independently of the Bankruptcy Code, and the Bankruptcy Code does not attempt to regulate how that contact is to be made, when and if such contact is appropriate." *Id.* at *16-17. Moreover, the cause of action was not "related to" the debtor's bankruptcy case because win, lose, or draw, there would be no affect on the bankruptcy estate inasmuch as the causes of action arose post-petition, the debtor was the only party harmed, and the proceeds of the action would belong solely to the debtor. *Id.* at *17-19.

In this case, when the Debtors filed their December 30, 2009 bankruptcy petition, their causes of action against Navy Federal were property of their bankruptcy estate. 11 U.S.C. § 541(a)(1) (providing that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."); *see also Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A v. Alvarez (In re Alvarez)*, 224 F.3d 1273, 1279-80 (11th Cir. 2000) (holding that a legal

malpractice claim arising from bankruptcy counsel's alleged negligence was property of the estate); *Polis v. Getaways, Inc. (In re Polis)*, 217 F.3d 899, 902 (7th Cir. 2000) ("Legal claims are assets whether or not they are assignable, especially when they are claims for money...."); *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 207-08 (5th Cir. 1999) (stating that debtors have "an express, affirmative duty to disclose all assets, including contingent and unliquidated claims.") (emphasis in original). The district court has exclusive jurisdiction over the property of the estate. 28 U.S.C. § 1334(e).

While the Debtors exempted $39,000 in potential proceeds from this litigation, any recovery above that amount – at the time the case was filed – would have been payable to estate creditors. *See Schwab v. Reilly*, ___ U.S. ___, 2010 U.S. LEXIS 4974 (June 17, 2010) (stating that debtors who claim a monetary exemption are entitled to the dollar amount claimed as exempt and are not entitled to an in-kind exemption for the entire property interest). Thus, at a minimum, the Debtors' pre-petition claims against Navy Federal were "related to" their bankruptcy case because, at the time the Debtors' filed their complaint, it was conceivable that the Debtors could obtain a recovery against Navy Federal in an amount exceeding their exemptible interest.[4]

Although the Debtors' Chapter 7 trustee had filed a "report of no distribution" on February 8, 2010, which was before the Debtors filed this adversary complaint, that report did not act to abandon property of the estate. *E.g., Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 617-18 (7th Cir. 2002) (stating that a trustee's report of no distribution is not an abandonment because the procedures for abandonment set forth in the Bankruptcy Code and Rules were not followed); *In re Reed*, 940 F.2d 1317, 1322 (9th Cir. 1991) ("Although filing a 'No Asset' report may exhibit the requisite intent to abandon an asset, that report in and of itself cannot result in abandonment unless the court closes the case."); *Mendelsohn v. Ozer*, 241 B.R. 503, 506 (E.D.N.Y. 1997) ("The filing of a Report of No Distribution is insufficient proof of a conscious abandonment of an asset."); *In re Lehosit*, 344 B.R. 782, 784 (Bankr. N.D.W. Va. 2006) (stating that property may not be abandoned

---

[4] Statutory damages for violations of the West Virginia Consumer Credit and Protection act range from $100 to $1,000 per violation. W. Va. Code § 46A-5-101. The damage award under § 46A-5-101 may be indexed for inflation from 1974, the year the statute's enactment. § 46A-5-106.

before the case closes unless the procedures in Fed. R. Bankr. P. 6007 are followed). For property to be abandoned while a bankruptcy case is open, the Bankruptcy Code and Rules require a formal abandonment. *E.g.*, 11 U.S.C. § 554(a); Fed. R. Bankr. P. 6007; *Wissman v. Pittsburgh Nat'l Bank*, 942 F.2d 867, 872 (4th Cir. 1991) (stating that there should be a formal abandonment of the estate's interest in a lawsuit before it is pursued by the debtor); *Steyr-Daimler-Puch of America Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir. 1988) ("[B]efore the debtor or a creditor may pursue a claim, there must be a judicial determination that the trustee in bankruptcy has abandoned the claim."). The Debtors' Chapter 7 trustee never acted to formally abandon their causes of action against Navy Federal before the Debtors filed their February 26, 2010 adversary complaint.

Of course, on April 21, 2010, the Debtors received their discharges and their bankruptcy case was closed. Pursuant to 11 U.S.C. § 554(c), "any property scheduled . . . not otherwise administered at the time of the closing of the case is abandoned to the debtor . . . ." Thus, because the Debtors had scheduled their claim against Navy Federal and it was known to their Chapter 7 trustee, the claim was wholly abandoned by their bankruptcy estate on April 21, 2010, and the Debtors are entitled to the full amount of any recovery, even above the amount of their claimed $39,000 exemption.

The fact that the Debtors' lawsuit against Navy Federal will no longer impact their bankruptcy estate, however, does not mean that the court has lost subject matter jurisdiction over the allegations in the Debtors' complaint. Once a bankruptcy court has subject matter jurisdiction over an adversary proceeding, that jurisdiction is not divested by subsequent events. *E.g.*, *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) ("[I]f jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."); *Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 626 (4th Cir. 1997) (same); *see also Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 868 (9th Cir. 2005) ("[T]he discharge of a debtor does not automatically deprive the federal courts of jurisdiction over a claim 'related to' the bankruptcy."); *Porges v. Gruntal & Co. (In re Porges)*, 44 F.3d 159, 162 (2d Cir. 1995) (dismissal of bankruptcy case does not automatically strip the bankruptcy court of jurisdiction over adversary proceedings); *In re Morris*, 950 F.2d 1531, 1534 (11th Cir. 1992) (same); ; *In re Smith*, 866 F.2d 576, 580 (3d Cir.1989) (same).

### III. CONCLUSION

Because the bankruptcy court had subject matter jurisdiction over the Debtors' adversary complaint at the time it was filed, the court has not lost subject matter jurisdiction over the adversary complaint even though the alleged causes of action have been abandoned to the Debtors and the Debtors' main bankruptcy case has closed.[5]

---

[5] Navy Federal made no request in its motion to dismiss that the court abstain from adjudicating the adversary proceeding in favor of resolution by the state court.